1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

8
9

SARAH NEMERGUT,                           )
                                          )
                Plaintiff,                )        Case No.  2:13-cv-00254-GMN-GWF
                                          )
vs.                                       )        **FINDINGS AND**
                                          )        **RECOMMENDATION**
CAROLYN W. COLVIN,                        )
Acting Commissioner of Social Security,   )        Motion to Remand (#15)
                                          )
                Defendant.                )
_____  )

10
11
12
13
14
15
16
17
18
19
20

        This matter is before the Court on Plaintiff Sarah Nemergut's Complaint for Review of
Final Decision of the Commissioner of Social Security (#1), filed on February 14, 2013.
Defendant's Answer (#12) was filed on August 7, 2013, as was a certified copy of the
Administrative Record (the "A.R."). *See Notice* (#13).  This matter has been submitted to the
undersigned United States Magistrate Judge for Findings and Recommendations on Plaintiff's
Motion for Remand (#15), filed on September 5, 2013.  The Acting Commissioner filed her Cross
Motion to Affirm and Opposition to Plaintiff's Motion for Reversal (#22) on November 27, 2013.

21

## BACKGROUND

22
23
24
25
26

        Plaintiff seeks judicial review of Administrative Law Judge Brendan Flanagan's ("ALJ")
decision dated August 19, 2011.  *See* Administrative Record ("A.R.") 16-26.  The issue before the
Court is whether the ALJ erred at step four of his analysis by improperly rejecting the opinions of
treating physicians and by failing to properly evaluate Plaintiff's credibility in determining her
residual functional capacity ("RFC").

27
        ...

28
        ...

**A.      Procedural History**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on September 5, 2009, alleging that she became disabled on May 1, 2004.  A.R. 16.  The application was denied initially, and upon administrative reconsideration.  *Id.*  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.*  At a hearing on March 29, 2011, in Jacksonville, Florida, Plaintiff requested a continuance to secure the services of a representative.  *Id.*  The hearing was rescheduled for June 8, 2011.  *Id.*  Plaintiff appeared with her attorney, Todd Kurland, and testified in support of her claim.  *Id.*  Paul R. Dolan, an impartial vocational expert, also appeared at the hearing.  *Id.*  In a decision dated August 19, 2011, ALJ Brendan Flanagan found Plaintiff was not disabled within the meaning of the SSA.  *Id.*  Plaintiff timely filed a Request for Review, which was denied by the Appeals Council on December 19, 2012.  A.R. 1.  When the Appeals Council declined to review the ALJ's decision, the decision became final.  *Id.*  Plaintiff then filed this action for judicial review pursuant to 42 U.S.C. 405(g).  This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

**B.      Factual History**

Plaintiff Sarah Nemergut was born on November 10, 1980.  A.R. 48.  She was 30 years old at the time of the hearing on June 8, 2011.  *Id.*  Ms. Nemergut is 5' tall, and weighed 216 pounds.  A.R. 55.  She is a high school graduate and received an Associate's degree in Business Administration around 2003.  A.R. 48.  Her past employment included File and Data Entry Clerk, Cashier, Customer Service Representative, Library Attendant, and Amusement Ride Attendant.  A.R. 255.  Her last full-time employment was as a Medical Claims Processor for Cigna Health Care from March 2003 to June 2004.  A.R. 255.  She resides with her husband when he is not away for work as a regional, commercial Pilot for Delta Airlines.  A.R. 50.  She does not have any children.  A.R. 48.

In 2003, Plaintiff indicated she had bouts of sudden weight gain despite having a relatively low calorie diet and dancing competitively four hours a day, two to three times a week.  A.R. 570.  She gained 55 pounds in five to six months.  *Id.*  She indicated that she quit dancing in 2003 or

1    2004 due to her fatigue.  A.R. 65.  She, however, continued with the ballet bar as a form of

2    exercise.  A.R. 93.  Plaintiff testified that she is limited in performing activities of daily living, such

3    as grooming, cooking, household chores, and driving.  A.R.  51, 60-63.  She cut off her hair

4    because she was having a hard time holding her hands over or head for grooming purposes.  A.R.

5    60.  Although she is able to get dressed and cook simple meals, her husband does most of the

6    cooking, as well as the cleaning and laundry.  A.R. 60-61, 76.  She is able to care for herself and

7    three dogs while her husband is traveling for work.  A.R. 22.  Plaintiff  indicated that she is able to

8    use the computer for an hour a day and watches television.  *Id*.  She generally rotates between

9    sitting in a recliner and lying on the couch during the day.  *Id.*  Plaintiff testified that she was last

10   able to take her dogs for walks when she resided in Mississippi, which the record indicates was

11   between 2006 to 2010.  A.R. 84, 45-46.  In a Function Report completed in October 2009, Mr.

12   Nemergut indicated that Plaintiff could perform light cleaning and laundry.  A.R. 307.  He also

13   indicated she spends a lot of time scrapbooking, is able to shop between one to three hours a week,

14   and sometimes goes to the grocery store, Wal-Mart, the movies, and the casino.  A.R. 308-309.

15   She moved several times since the alleged onset date, and traveled frequently by plane and by car

16   for medical care and family visits.  A.R.  45, 63-73.

17           Plaintiff alleged she became disabled on May 1, 2004 as a result of Cushing's disease,

18   depression, obesity, and hypopituitarism.  A.R. 406.  In addition, she alleged impairments of

19   Addison's Disease, sarcoidosis, anxiety, depression, osteopenia, headaches, insomnia, fatigue,

20   chronic diarrhea, memory deficits, and joint pain.  A.R. 18.  On May 19, 2004, Plaintiff presented

21   to Dr. Luciano for evaluation and management of polycystic ovarian syndrome.  A.R. 436.  Blood

22   tests revealed elevated cortisol and glucose limits.  A.R. 436.  Dr. Luciano  indicated that "this

23   pattern is very reminiscent of stress or depression" but also suggested possible Cushing's Disease.

24   *Id*.  He suggested meditation, exercise and a decrease in caloric intake to lose weight.  *Id*.  He also

25   advised Plaintiff to undergo additional testing to confirm the diagnosis.  *Id*.  Plaintiff returned for a

26   follow-up evaluation on June 23, 2004.  A.R. 437.  Several laboratory studies showed her

27   metabolic panel with fasting glucose and insulin levels were all normal and all other blood tests had

28   been normal.  *Id*.  Dr. Luciano prescribed Paxil to improve her feelings of sadness and depression.

3

1    *Id.*

2           On August 17, 2005, Plaintiff returned to Dr. Luciano's office to review her blood work

3    from her annual appointment.  A.R. 438-439.  Dr. Luciano found her elevated cortisol level

4    "somewhat worrisome."  A.R. 439.  He recommended further testing to help rule out Cushing's

5    syndrome.  A.R. 439.  An endocrinologist in Florida performed an overnight dexamethasone

6    suppression test with normal results.  A.R. 440.  During an examination on November 30, 2005,

7    Dr. Luciano found the test results essentially ruled out adrenal or pituitary problems.  A.R. 440.

8    Having ruled out Cushing's Disease, he recommended Ms. Nemergut join a more regimented work

9    out program such as Weight Watchers.  *Id.*

10          In October 2007, Plaintiff sought medical treatment from Dr. Ludlam in Seattle,

11   Washington.  Dr. Ludlam described Plaintiff as a "well-developed, well-nourished, overweight,

12   pleasant, and cooperative 26-year-old female in no acute distress.  She is periodically teary during

13   the examination.  She has some cushingoid features, but is not strikingly cushingoid looking."

14   A.R. 544.  An abdominal CT scan of Plaintiff on October 8, 2007 revealed an 11-12 mm mass in

15   the cranial margin of the left adrenal gland, which was characterized as a fatty adenoma.  A.R. 441.

16   Dr. Ludlam found Plaintiff's precipitous weight gain coupled with her elevated scrum cortisol

17   levels and normal 24-hour urine-free cortisol levels consistent with cyclic Cushing's.  A.R. 470.

18          Plaintiff was examined by Dr. Childress on January 25, 2008 to follow-up on the possible

19   assessment of cyclic Cushing's.  A.R. 899.  He indicated that the lab results were not consistent

20   with adrenal or pituitary Cushing's Disease.  A.R. 901.  He found that Plaintiff's ACTH and

21   cortisol excluded the possibility that her adrenal lesion is autonomous and the cause of her issues.

22   *Id.*  He also stated that, "the very existence of cyclic Cushing's is debated in the endocrine

23   community."  *Id.*  Dr. Childress assessed Plaintiff with Hypercortisolism and Insulin Resistance

24   Syndrome.  He recommended using a low-dose (0.25mg) dexamethasone daily to suppress the HPA

25   axis and lower her cortisol levels.  A.R. 901.

26          On April 4, 2008, Dr. Ludlam discussed pituitary surgery with Plaintiff.  A.R. 544.  He

27   noted, however, that recent laboratory testing was insufficient to definitively diagnose Cushing's

28   syndrome and that Ms. Nemergut's case was "complicated."  A.R. 544, 567.  In his medical report,

4

Dr. Ludlam stated, "[s]he states that her symptoms have been progressively getting worse over the last 5 years and are significantly impacting her quality of life.  She is convinced that she has Cushing's and states that she would like to proceed with surgery even though se [sic] is aware that she has a complicated case."  A.R. 544.  Having consented to the surgery, Dr. Ludlam referred Plaintiff to Dr. Mayberg, the Executive Director for the Swedish Neuroscience Institute, to perform the surgery.  A.R. 562.

Plaintiff was admitted to the Swedish Medical Center in Seattle, Washington, on April 8, 2008 and underwent a transphenoidal adenectomy for Cushing's disease.  A.R. 497.  Her cortisol levels postoperatively were not satisfactory, so she underwent a re-exploration TSA on April 11, 2008.  A.R. 497.  Her cortisol levels stabilized and she was discharged home to Mississippi on April 13, 2008.  A.R. 497.  In a letter dated April 14, 2008, in reference to Plaintiff's procedures, Dr. Mayberg indicated that "[w]e are very happy about these results and hopefully, this will portend for permanent cure for Sarah."  A.R. 564.

On April 22, 2008, Plaintiff presented with Dr. Lendel for an evaluation following her pituitary surgery.  A.R.  902.  She described Plaintiff's general appearance as "well developed, healthy appearing, obese Caucasian female in no acute distress; no moon face, no buffalo hump."  A.R. 904.  General examination notes from Dr. Lendel consistently indicated that Plaintiff had normal motor strength and tone, normal muscularity, and no evidence of abnormalities in her extremities.  A.R. 904, 907, 909, 911, 913, 916.   She diagnosed Plaintiff with Hypercortisolism, Insulin Resistance Syndrome, and Benign Neoplasm of Pituitary Gland.  *Id*.  On December 4, 2008, the doctor added growth hormone deficiency to Plaintiff's diagnosis.  A.R. 911.

On September 22, 2008, Dr. Ludlam evaluated Plaintiff post pituitary tumor resection surgery performed by Dr. Mayberg.  A.R.  496.  He indicated there was not enough data to diagnose a recurrence of Cushing's syndrome and expected, with time, Plaintiff would feel a decrease in her symptoms.  A.R. 539.  He also indicated that Plaintiff's IGG-1 was below normal limits suggesting the possibility that she is growth hormone deficient.  *Id*.  He recommended a growth hormone stimulation test (GHST) to confirm the diagnosis.  A.R. 540.  On September 25, 2008, Plaintiff returned to the clinic for a follow-up regarding her tests.  A.R. 542.  She reported experiencing

symptoms similar to those she experienced prior to her surgeries including weight gain, acid reflux, and dizziness with standing. A.R. 542. Dr. Ludlam indicated that Plaintiff may be experiencing a recurrence of Cushing's and recommended radiation or an adrenalectomy in the future. A.R. 542.

Plaintiff elected to have bilateral adrenalectomy and was referred to Dr. Chiang for the procedure. A.R. 722. Dr. Chiang indicated that Plaintiff appeared to have hypercortisolism following pituitary surgery with her Cushing's disease. A.R. 734. He agreed with Dr. Ludlam that bilateral laparoscopic adrenalectomy would be an appropriate approach. *Id.* On June 3, 2009, Plaintiff underwent elective surgery to remove her adrenal glands. A.R. 723. Post-operative treatment notes indicated that the Plaintiff's status was "excellent," and she reported diminishing pain levels. A.R. 732.

In a letter dated January 6, 2010, Dr. Lendel wrote that she supported Plaintiff's application for disability. A.R. 887. She stated that Plaintiff suffered from multiple hormone imbalances following pituitary surgery and adrenal insufficiency following adrenal surgeries. A.R. 887. Dr. Lendel indicated that Plaintiff was not able to perform her job duties due to a combination of her medical conditions. *Id.* In a Medical Source Statement dated January 12, 2010, Dr. Lendel's objective findings included limited range of motion in the large joints, joint instability in the knees, reduced grip strength, impaired sleep, weight change, impaired appetite, swelling, muscle spasm, muscle atrophy, and abnormal gait. A.R. 888. She added that Plaintiff suffered from anxiety and depression and was severely limited in her ability to tolerate work stress. A.R. 889. On March 23, 2011, Dr. Lendel wrote that Plaintiff had been disabled due to her multiple symptoms of Cushing's disease and hypopituitarism since she first met her in 2008. A.R. 1053.

In a letter dated May 24, 2011, Dr. Ludlam indicated that the exact date of onset of Plaintiff's symptoms was unknown. A.R. 1055. He indicated that, "Sarah has evidence supporting a Cushing's diagnosis dating all the way back to 2003, but it took until 2009 to finally get enough evidence to move on to such a definitive treatment as bilateral adrenalectomy. *Id.*

### C.   ALJ's Decision

In his decision dated August 19, 2011, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 1, 2004, through the date last insured.

A.R. 16.  The ALJ found that Plaintiff possessed sufficient residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with limitations.  A.R. 19.  In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f).  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date, May 1, 2004, through her date last insured, March 31, 2008.  A.R. 18.  Second, he found Plaintiff had a severe impairment in the form of Cushing's Disease (hypercortisolism).  *Id*.  The ALJ considered Plaintiff's alleged impairments of Addison's Disease, sarcoidosis, anxiety, depression, osteopenia, headaches, insomnia, fatigue, chronic diarrhea, memory deficits, and joint pain.  A.R. 18.  He  concluded, however, that these impairments did not rise to a "severe" level as defined in the regulations.  A.R. 19.  At step three of his analysis, the ALJ concluded that Plaintiff's impairment or combination of impairments did not meet or equal one of the listed impairments in  20 C.F.R. § 404, Subpt. P, Appx. 1.  A.R. 22.  In support of this finding, ALJ Flanagan stated:

> In reaching this conclusion, the undersigned has considered, in partiuclar, the listings found under section 9.04 (Endocrine System).  Although the claimant has been diagnosed with an impairment which is analyzed under the aforementioned listing, the medical records do not demonstrate that all additional requirements set forth by any of the pertinent paragraphs of any of the aforementioned listings have been met.  Furthermore, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.

A.R.  19.

At step four of his analysis, the ALJ found Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), with limitations which included standing or walking for six hours and sitting for six hours in a regular eight-hour workday.  A.R. 19.  The ALJ found that the Plaintiff was capable of performing her past relevant work.  A.R. 25.  In support of this finding, the ALJ relied on the testimony of Vocational Expert ("VE") Paul R. Dolan that a hypothetical person of Plaintiff's age, education level, past work experience, and residual functional capacity could perform her past relevant work.  A.R. 25.

In determining Plaintiff's RFC, the ALJ found that the Plaintiff's allegations as to the severity of her symptoms and the effect on function were not consistent with the non-medical

evidence.  A.R. 21.  In making this finding, the ALJ noted statements and observations in the

record regarding Plaintiff's daily activities.  A.R. 21.  Specifically the ALJ noted that, "[t]he

claimant has alleged disabling limitations dating back to 2004, yet a review of the evidence

indicates that the claimant did not get treatment until 2008 and engaged in a wide range of activities

up to that point, including dancing four hours a day, two to three days a week, which shows good

physical functioning."  A.R. 22.  Additionally, the ALJ stated:

> The claimant's husband reported to State agency representatives that
> the claimant was able to cook and shop on her own while he was
> away at work, as well as care for their three dogs, go to movies and
> visit the casino.  He reported that the claimant could shop for up to
> three hours at a time.  The claimant's husband also reported that she
> spends a lot of time watching movies and scrapbooking.  These
> activities suggest a level of concentration inconsistent with a
> disabling level of pain.

A.R. 22.

Additionally, the ALJ found that the medical evidence did not support the severity of

Plaintiff's alleged symptoms or limitations.  A.R. 22.  In support of this finding, the ALJ gave a

considerably detailed account of Plaintiff's medical records contained in the administrative record.

He noted that "office visit notes reflect numerous occasions on which the claimant did not

complain of back pain, headaches, or other symptoms of her alleged impairments, which contrasts

with the current claim of ongoing, disabling symptoms since the alleged onset date."  A.R. 22.

Furthermore, the ALJ indicated that the medical evidence of record reflected minimal objective

findings of disabling limitations.  A.R. 22.  In support, the ALJ stated:

> The claimant has alleged disabling limitations from weakness
> associated with Cushing's Disease, but multiple physical
> examinations of the claimant have revealed normal gait and muscle
> strength.... Given the claimant's allegations of totally disabling
> symptoms, one might expect to see some indication in the treatment
> records of restrictions placed on the claimant by the treating doctors.
> Yet a review of the record in this case reveals no restrictions
> recommended by any treating doctor, other than a recommendation
> from a treating doctor in 2004 that the claimant not participate in
> overtime at work, due to headaches and jaw pain.  However, it should
> be noted that despite this limitation, the claimant continued to
> exercise and dance competitively for several years after this.  In fact,
> the claimant's treating endocriniologist recommended that the
> claimant treat her symptoms with aggressive weight loss and
> exercise, which reflects the physician's assessment that the claimant
> was capable of exercising.

A.R. 22

In reaching his conclusion, the ALJ gave more weight to the opinions of Plaintiff's treating physicians, Dr. Childress and Dr. Kennedy. A.R. 23. The ALJ found their opinions merited great weight because they had a treating relationship with Plaintiff, their opinions were well supported by medically acceptable clinical and laboratory diagnostic techniques, and their opinions were more consistent with the record as a whole. *Id.* In contrast, the ALJ concluded that Dr. Lendel's opinion was not entitled to controlling or substantial weight because it was not well supported by medically acceptable clinical and laboratory diagnostic techniques, and was inconsistent with the reports from the other sources who had examined the Plaintiff. A.R. 23. In support, the ALJ stated that:

> Dr. Lendel's opinion appears to be a reiteration of the claimant's statements to her; particularly because this opinion is inconsistent with her own treatment notes. Dr. Lendel's treatment records from this period reflect minimal complaints from the claimant, and minimal findings of medical signs supporting a diagnosis of Cushing's Disease. Dr. Lendel's treatment notes from this time period indicate that the claimant's insulin levels were normal and that she had stopped taking Metformin. Dr. Lendel also noted no sign of moon face, buffalo hump, no acne or striae, or other signs to support a diagnosis of Cushing's Disease. In fact, Dr. Lendel's primary diagnosis for the claimant was not Cushing's Disease at all, but rather growth hormone deficiency.

A.R. 23-24. Additionally, the ALJ afforded little weight to Dr. Ludlam's opinion. The ALJ found his opinion inconsistent with the opinion of the medical consultant for the State agency who reviewed the record. A.R. 24. Furthermore, the ALJ cites Dr. Ludlam's indication that his opinion was based upon the Plaintiff's reports, which the ALJ found were inconsistent with his own treatment notes. *Id.* The ALJ concluded that, when considering the record in its entirety, although the Plaintiff may have some discomfort, she did not establish the type of pain which would preclude her from performing work as accommodated for in her residual functional capacity. A.R. 25.

## DISCUSSION

### I.      Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924

F.2d 841, 846 (9th Cir. 1991).  The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001).  The Court must look to the record as a whole and consider both adverse and supporting evidence.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive.  42 U.S.C. § 405(g).  Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)).  *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision.  *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings.  *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)).  In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based."  *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *Id.*

...

...

## II.      Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

|       |       |
|-------|-------|
| (a)   | he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and |
| (b)   | the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. |

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

## III.      Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id.* § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt.

11

P, App. 1.  The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment.  *Id*. § 404.1520(d).  If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work.  *Id*. § 416.920(e).  If the claimant can engage in past relevant work, then no disability exists.  *Id*. § 404.1520(e).  If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work.  *Id*. § 404.1520(f).  If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits.  *Id*. § 404.1520(a).  Plaintiff now asserts the ALJ erred at step four of his analysis by  improperly rejecting the opinions of treating physicians and by failing to properly evaluate Plaintiff's credibility when determining her residual functional capacity ("RFC").

**A.    The ALJ did not error at step four in determining that Plaintiff could perform her past relevant work based on her RFC**

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC.  *See* 20 CFR 404.1520(e) and 416.920(e).  In determining Plaintiff's RFC, the ALJ gave "little weight" to the opinions of treating physicians, Dr. Lendel and Dr. Ludlam.  Furthermore, the ALJ found Ms. Nemergut's statements not credible to the extent they were inconsistent with his residual functional capacity assessment.  Plaintiff argues that the ALJ failed to follow the Treating Physician Rule.  *See Doc. #15* at pg. 13.  Plaintiff also argues that the ALJ applied the wrong legal standard in finding Plaintiff not credible.  *See Doc. #15* at pg. 18.

**1.    The ALJ's decision to give little weight to the opinions of Dr. Lendel and Dr. Ludlam is supported by substantial evidence in the record**

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).  If the treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it should be afforded more weight.  20 CFR 416.927(d)(2).  If the treating physician's opinion is contradicted by another physician, then the

1  treating physician's opinion can only be rejected by the Secretary for specific and legitimate

2  reasons, supported by substantial evidence in the record for so doing. *Lester v. Charter*, 81 F.3d

3  821, 831 (9th Cir. 1996).  The Court must uphold the Commissioner's findings if substantial

4  evidence supports them. *See* 42 U.S.C. § 405(g).  The ALJ can meet this burden by setting out a

5  detailed and thorough summary of the facts and conflicting clinical evidence, stating his

6  interpretation thereof, and making findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

7  2002).

8       Here, the ALJ set out a detailed and thorough summary of the facts noting the conflicting

9  clinical evidence.  A.R. 20-25.  As the ALJ noted, Dr. Lendel stated that the Plaintiff has been

10  completely disabled since 2008.  A.R. 23.  Dr. Ludlam indicated that Plaintiff was disabled when

11  he first met with her in 2007, but could not determine an exact date that her symptoms first began.

12  A.R. 24.  In contrast, the medical consultant for the State agency, Dr. Glenn James, found Plaintiff

13  capable of frequently lifting/carrying 25 pounds, standing or walking about 6 hours a day, and

14  sitting 6 hours a day in an 8-hour workday.  A.R. 23.  Similarly, Dr. Luciano merely limited

15  Plaintiff from working overtime due to headache and jaw pain.  A.R. 24.  Furthermore, the ALJ

16  indicated that the medical evidence of record reflect minimal objective findings of disabling

17  limitations.  A.R. 22.  Confronted with an inconsistency, the ALJ made a finding on the credibility

18  of the opinions based on a consideration of the record as a whole.

19       With regard to Dr. Lendel, the ALJ found that her opinion that the Plaintiff has been

20  completely disabled since 2008 was not entitled to controlling weight.  A.R. 23.  The ALJ found

21  her opinion was not supported by medically acceptable clinical and laboratory diagnostic

22  techniques, and was inconsistent with the reports from the other sources who examined Plaintiff.

23  *Id*.  Her opinion was also found to be inconsistent with the opinion of the medical consultant for the

24  State agency who reviewed the record.  A.R. 23.  Furthermore, the ALJ found Dr. Lendel's opinion

25  to be a reiteration of the Plaintiff's statements and noted the inconsistencies between the doctor's

26  opinion and her own treatment notes.  *Id*.

27       Similarly, the ALJ determined that Dr. Ludlam's opinion that the Plaintiff was disabled

28  when he first met with her in 2007 was not entitled to substantial weight.  A.R. 24.  ALJ Flanagan

found that Dr. Ludlam's opinion was inconsistent with the opinion of the medical consultant for the State Agency who reviewed the record. *Id*. Furthermore, the ALJ noted Dr. Ludlam's acknowledgment that he relied on Plaintiff's reports as a basis for his findings in his letter to the Social Security Administration. A.R. 24.

Plaintiff argues that the opinion of non-examining state agency medical consultant, Dr. Glenn James, was not substantial evidence that justified the rejection of the opinions from treating physicians. *See Doc. #15* at pg. 14 ¶¶ 26-28. Plaintiff cites *Lester v. Chater*, which held that opinions from non-examining physicians are not, standing alone, substantial evidence that justifies the rejection of opinions from treating physicians. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). ALJ Flanagan, however, did not reject the opinions of Dr. Lendel and Dr. Ludlam based solely on Dr. James' opinion. In *Magallanes*, the Ninth Circuit upheld the Commissioner's decision to reject the opinion of a treating physician based on the contradicting testimony of a nonexamining medical advisor that was supported by other evidence including laboratory test results, reports from other examining physicians, and testimony from the claimant that conflicted with her treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989). Similarly, in *Andrews*, the Ninth Circuit upheld the rejection of an examining psychologist's assessment because the opinion not only conflicted with the opinions of five nonexamining mental health professionals, but also conflicted with claimant's testimony and with medical reports contained in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1042-43.

Similar to *Magallanes* and *Andrews*, the ALJ also based his rejection of Dr. Lendel's and Dr. Ludlam's assessments on several medical reports from examining physicians. The ALJ found that the medical evidence of record supported Dr. James' opinions and contradicted the aforementioned doctors' assessments of the severity of Plaintiff's symptoms. Treating physician, Dr. Luciano, for example, found that lab results of Plaintiff's blood work ruled out Cushing's syndrome and suggested Plaintiff join a more regimented work out program for weight loss. A.R. 440. Dr. Luciano also recommended Plaintiff be limited from performing overtime work due to headaches and jaw pain, but did not limit Plaintiff from working all together. A.R. 435. Treating physician Dr. Childress found that Plaintiff's lab results were not consistent with adrenal or

pituitary Cushing's Disease.  A.R. 899.  Dr. Childress also observed that Plaintiff had normal motor strength and tone, normal muscularity, and no evidence of abnormalities in her extremities during her examination.  A.R. 900.  He described Plaintiff's general appearance as, "well developed, healthy appearing, obese Caucasian female in no acute distress."  A.R. 900.  Dr. Kennedy observed in May and July 2009 that Plaintiff had normal gait and balance and no evidence of weakness, joint deformity, edema (swelling), or other abnormalities in her extremities.  A.R. 628, 631.  Medical visits with Dr. Metchick in September 2010, January 2011, and April 2011, also indicated Plaintiff had normal gait and range of motion and no evidence of joint deformity, pain, or functional limitation.  A.R. 976, 1001, 1065.  Furthermore, numerous medical reports from Dr. Newman throughout 2008  indicated that Plaintiff had normal gait and station.  A.R. 773, 777, 779, 781, 783, 787, and 789.  The ALJ therefore drew upon the objective medical evidence and the opinion of the State agency medical consultant to reject Dr. Lendel's and Dr. Ludlam's opinions that Plaintiff was disabled.

Additionally, the ALJ rejected the opinions of Dr. Lendel and Dr. Ludlam because he found that the doctors' opinions were inconsistent with their respective treatment notes.  A.R.  23, 24.  In *Tommasetti*, the Ninth Circuit held that the ALJ properly rejected a treating physician's opinion by noting that the physician's conclusions regarding the claimant's functional limitations "did not mesh with her objective data or history."  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  In her letter supporting Ms. Nemergut's application for disability, Dr. Lendel specifically states,

> Ms. Nemergut has reported to me that she has not been able to work since 2004, due to ongoing symptoms of her Cushing's and then hypopituitarism: severe malaise, memory problems, loss of balance, myalgias and arthralgias.  The patient was not able to carry out her job duties and stay employed due to her multiple medical conditions.

A.R. 1053.  During her examination of Plaintiff on April 22, 2008, however, Dr. Lendel described Plaintiff as a, "well developed, healthy appearing, obese Caucasian female in no acute distress; no moon face, no buffalo hump."  A.R. 904.  Furthermore, general examination notes from Dr. Lendel consistently indicated that Plaintiff had normal motor strength and tone, normal muscularity, and no evidence of abnormalities in her extremities.  A.R. 904, 907, 909, 911, 913, 916.  These findings

contradict her opinion in a Medical Source Statement dated January 2010, wherein she indicated that Plaintiff had marked functional restrictions including instability, swelling, muscle spasms, muscle atrophy, and abnormal gait. A.R. 888. The ALJ therefore concluded that the opinion of Dr. Lendel should be afforded "little weight".

In a letter dated May 24, 2011, Dr. Ludlam stated that there is evidence to support a Cushing's diagnosis dating back to 2003, but indicated the exact date of onset of symptoms is unknown. A.R. 1056. He indicated that five years prior to 2008, Ms. Nemergut's symptoms had been progressively getting worse and were significantly impacting her quality of life. *Id*. He stated,

> Per her report, her many ailments made it difficult to carry out normal activities of life and retain gainful employment. She could not shower and dress without laying down. She could not vacuum her house. She could not cook a dinner for her and her husband. Going to the grocery store (and getting the rest needed afterwards) consumed an entire day. Getting out of bed became difficult due to insomnia, problems staying asleep, and waking exhausted.... Sarah had good days and bad days, but good days were always followed by the bad because when she felt well enough to push herself to an extreme, she would then suffer from debilitating fatigue afterwards (i.e. walking around a grocery store would exacerbate her debilitating symptoms). Exercise was not possible, which only contributed to her weight gain. She would not have been able to complete a 5-day workweek due to all of her symptoms. She could not last through an 8-hour work day and would likely miss many days of work per week.

A.R. 1056. During Plaintiff's hearing on June 8, 2011, ALJ Flanagan questioned Plaintiff about Dr. Ludlam's statement to determine the source of the information, as follows:

> Q.   In, in this letter, he talks about things that happened before he saw you, and, and these things include that you could not cook a dinner for your husband, going to the grocery store consumed an entire day, and she could not vacuum her house. None of that is in his records.
>
> A.   Yeah, those would, those would all be things that I would have e-mailed him about.
>
> Q.   Okay
>
> A.   You know.
>
> Q.   In this letter that he wrote, did you write any of that for him?
>
> A.   No.

1    Q.    Okay. But you gave him the information?

2    A.    I did give him information –

3    A.R. 82.

4    The ALJ also found that Dr. Ludlam's opinion of the severity of Plaintiff's symptoms was

5    inconsistent with his own treatment notes.  A.R. 24.  In numerous medical reports, Dr. Ludlam

6    indicated that Plaintiff had only mild proximal muscle weakness in the upper extremities, no

7    tremors, mild lower extremity edema, and 5/5 motor and sensory throughout.[1]  A.R. 471, 545, 571.

8    As the ALJ points out, there is nothing in Dr. Ludlam's treatment records that supports his opinion

9    of disabling limitations to the degree alleged.  Furthermore, Dr. Ludlam's opinion was inconsistent

10    with Mr. Nemergut's opinion of his spouse's limitations.  ALJ Flanagan specifically inquired about

11    these inconsistencies during the hearing:

12    Q.    Okay.  He [Mr. Nemergut] said you do some light cleaning.
      Do you still do that?

14    A.    Well, I don't.  And even back then, I really didn't, because,
      you know, pretty much doing any kind of bending over or
      anything like that makes me dizzy and, you know, really
15         wears me out.  So, I mean, he pretty much always did it.  He
      just – I think he meant that I could do some light cleaning.
16         You know what I – I think, the way the question was phrased,
      I think it asked if I could.  I think.  But –

17
18    Q.    And I'll just tell you, and you can explain this, this was done
      in October of '09.  It says, list the household chores that the
      person's able to do; and he said, light cleaning and laundry.

19
20    A.    Yeah, able to, yeah.

21    Q.    Could you do laundry?

22    A.    I'm sure I – actually, I, I did switch some laundry the other
      day, yeah.  I mean, you know, just one piece at a time.  But –

23    Q.    And –

24    ...

25

26
_____

27        [1] This finding was inconsistent with other examining physicians who found Plaintiff had normal
      motor strength and tone, normal muscularity, and no evidence of abnormalities in her extremities.  A.R.
28    900, 631, 773, 976, 1001, 1065.

A.     – I mean, I could get through it, yeah.  I mean, I just wouldn't lift it all up at once.

Q.     Okay.  And you said that you would do some exercising once a week.

A.     Back then –

Q.     This is October '09.

A.     – probably.

A.R. 84-85.

Plaintiff further argues that neither Dr. Childress nor Dr. Kennedy gave opinions as to Ms. Nemergut's functioning, therefore the ALJ erred in giving their opinions greater weight.  She alleges that the Commissioner erred in considering the doctors' silence as evidence that Plaintiff was capable of performing light work.  The Court is not persuaded with this argument.  There is no indication in the record that the ALJ considered Dr. Childress' and Dr. Kennedy's silence as conclusive evidence that Plaintiff was capable of performing light work.  Rather, ALJ Flanagan considered the entire record as a whole in making the RFC determination.  Statements that a claimant is disabled or unable to work are issues reserved to the Commissioner.  *See* 20 U.S.C. § 404.1527(d)(1).  Based on a review of the record as a whole, the Court finds there was sufficient evidence cited to by the ALJ to support his determination of Plaintiff's RFC.

Plaintiff also argues that the ALJ erred in giving the State medical consultant's opinion greater weight because the record did not include any opinion evidence from a treating or examining source as to Plaintiff's functioning at the time Dr. James reviewed the record.  Plaintiff's argument is unavailing.  An ALJ is required to consult with a medical expert in cases where the record is devoid of any analysis of functional capacity by a physician or other expert.  *See Manso-Pizarro v. Secretary*, 76 F.3d 15, 17 (1st Cir. 1996).  In *Manso-Pizarro*, the First Circuit noted that with few exceptions, an ALJ, as a lay person, was not qualified to interpret raw data in a medical record.  *Id.*  Since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess the claimant's residual functional capacity based on bare medical records.  Therefore, the purpose of the State medical consultant's opinion is to interpret the raw, medical data when there is no opinion as to a claimant's functional

capacity.

Plaintiff also asserts that the ALJ improperly relied upon Dr. James' opinion because almost two years passed between Dr. James' opinion and the ALJ's decision.  Plaintiff, however, had the burden of establishing that she was disabled from her alleged onset date, May 1, 2004, through her date last insured, March 31, 2008.  A.R. 16.  Dr. James' opinion was rendered on November 23, 2009.  The two year lapse is therefore moot because Dr. James' opinion was rendered after the time frame within which Plaintiff had to establish disability.

The Court therefore finds that the ALJ properly provided specific and legitimate reasons, supported by substantial evidence in the record for giving "little weight" to Dr. Lendel's and Dr. Ludlam's medical assessments.

### 2. The ALJ's provided sufficient support to reject the subjective testimony of Plaintiff

Plaintiff argues that the ALJ applied the wrong legal standard by finding Mrs. Nemergut not credible to the extent her testimony conflicted with the ALJ's RFC determination.  *See Doc. #15* at pg. 18.  Plaintiff states that 20 C.F.R. § 404.1529(c)(4), instructs the ALJ to evaluate the consistency of a claimant's statement not against the adjudicators own RFC, as the Plaintiff alleges the ALJ did here, but rather with the evidence of record prior to making the RFC determination.

Here, ALJ Flanagan found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they are inconsistent with the above residual functional capacity assessment."  A.R. 21.  In *Bjorn v. Astrue*, the Seventh Circuit found the use of such "template" problematic because "the assessment of a claimant's ability to work will often depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.  That gets things backwards."  *See Bjorn v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012).  In *Bjorn*, however, the ALJ failed to provide the specific evidence he considered in reaching his conclusion.

Unlike *Bjorn*, ALJ Flanagan provided specific evidence to support his determination.  He found that "[t]he severity of the symptoms and the alleged effect on function [were] not entirely

1   consistent with the total medical and nonmedical evidence, including statements by the claimant

2   and others, observations regarding activities of daily living, and alternations of usual behavior or

3   habits." A.R. 21. He then went on to specifically reference those inconsistencies. He noted the

4   gap in Plaintiff's medical history, Plaintiff's allegations that she danced competitively, and

5   Plaintiff's ability to care for herself while her husband was traveling for work. A.R. 22. The ALJ

6   also noted Mr. Nemergut's report. He stated, "[t]he claimant's husband reported to State agency

7   representatives that the claimant was able to cook and shop on her own while he was away at work,

8   as well as care for their three dogs, go to movies and visit the casino. He reported that the claimant

9   could shop for up to three hours at a time. The claimant's husband also reported that she spent a lot

10  of time watching movies and scrapbooking." A.R. 22. The ALJ found that these activities

11  suggested a level of concentration inconsistent with a disabling level of pain. Furthermore, the ALJ

12  noted the numerous trips and long distances the Plaintiff traveled after her alleged onset date. *Id.*

13      Plaintiff argues that the ALJ's findings were still insufficient to find Ms. Nemergut's

14  testimony not credible because he based his determination on incorrect facts. Specifically,

15  Plaintiff alleges that the ALJ erred in finding that Plaintiff did not seek medical treatment until

16  2008. Furthermore, Plaintiff takes issue with the ALJ's finding that she danced two to three days a

17  week for four hours without referencing the evidence in the record. Here, the Court agrees with

18  Plaintiff in part. The record does indicate that Plaintiff quit dancing competitively around 2003 or

19  2004. A.R. 65. Plaintiff, however, testified that she continued using the ballet bar as a form of

20  exercise. A.R. 93. Furthermore, during the hearing, Plaintiff testified that she was able to exercise

21  as late as October 2009. A.R. 85. In *Molina*, the Ninth Circuit held that "an error is harmless so

22  long as there remains substantial evidence supporting the ALJ's decision and the error does not

23  negate the validity of the ALJ's ultimate conclusion.... In other words, in each case, we look at the

24  record as a whole to determine whether the error alters the outcome of the case." *See Molina v.*

25  *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Although the aforementioned facts are disputable, the

26  Court finds the errors harmless. The remaining factors cited by ALJ Flanagan in his decision

27  provide substantial evidence to support his determination that Plaintiff's claims as to the limiting

28  effects of her symptoms were not credible. The Court therefore finds the ALJ did not err at step

four of his analysis in determining Plaintiff's RFC.

## CONCLUSION

ALJ Flanagan's decision that Plaintiff has the residual functional capacity to perform light work with limitations is supported by substantial evidence in the record.  In determining Plaintiff's RFC, he properly provided specific and legitimate reasons, supported by substantial evidence in the record for giving little weight to Dr. Lendel's and Dr. Ludlam's medical assessments.  Furthermore, he set forth sufficient reasons in his decision for rejecting the credibility of Plaintiff's testimony regarding the severity of her impairments and her alleged inability to perform light work.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (#15) be **denied**, and that the Defendant's Cross Motion to Affirm (#22) be **granted**.

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  Appeals may been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 12th day of June, 2014.


GEORGE FOLEY, JR.
United States Magistrate Judge